Case number 20-1427, Sierra Club et al petitioners versus Federal Energy Regulatory Commission. Mr. Luckett for the petitioners, Mr. Estes for the respondent, Mr. Marwell for the intervener, Mountain Valley Pipeline LLC. Good morning, Council. Mr. Luckett, please proceed when you're ready. May it please the court, my name is Benjamin Luckett and I represent the petitioners. I'd like to reserve two minutes of my time for rebuttal, please. The respondent Mountain Valley Pipeline has proved itself incapable of constructing a gas pipeline without causing significant harm to the streams and rivers flowing through the land that it traverses. Its sole attempt on the yet-to-be-completed Mountain Valley Pipeline mainline has so far resulted in hundreds of violations of erosion and sediment control requirements, some of which deposited inches of sediment throughout miles of streambeds nearly a foot deep in places. Those failures have continued throughout construction on the mainline in the face of repeated state enforcement actions levying multi-million dollar penalties and despite commitments by Mountain Valley to clean up its act. Now in the face of Mountain Valley's track record on the mainline and numerous other examples of severe erosion and sediment impacts on other pipeline projects, FERC concluded that the very same erosion and sediment mitigation measures that failed so consistently and so spectacularly will nonetheless prevent any significant aquatic impacts when implemented on Mountain Valley's south gate extension of the mainline. FERC's finding of insignificant direct and cumulative impacts ran contrary to evidence in the record, violated NEPA, and rendered its EIS arbitrary and capricious. Now if FERC is to rely on the imposition of certain mitigation measures to conclude that aquatic impacts will be minimal, that reliance must be reasonably supported by evidence in the record. As the Ninth Circuit explained in the South Fork Band Council case, an essential component of a can be effective. Here FERC failed to conduct any rational assessment. In responding to comments on the environmental impact statement, FERC explicitly stated that it would not meaningfully consider Mountain Valley's track record of erosion and sedimentation failures in determining the impacts of the south gate project. FERC explained that each proposal reviewed is considered on its own and instead of considering the potential effectiveness of Mountain Valley's specific mitigation measures on this specific pipeline in light of the company's past failures, FERC stated that it would rely more broadly on its professional judgment based on decades of experience on hundreds of projects. But FERC essentially ignored the negative experience with this applicant when reviewing this project, rendering its EIS arbitrary and capricious. FERC relied on this vague assertion of expertise to dismiss not only Mountain Valley's track record of failure employing these specific mitigation measures, but also the comments of an expert hydrogeologist who explained that Mountain Valley had selected only the least effective erosion and sedimentation controls and that Mountain Valley's measures were inappropriate for use on the steep slopes that would be traversed by the south gate project. The minimal erosion and sediment control measures listed by Mountain Valley, the expert explained, will not adequately detain stormwater runoff to trap sediment prior to release into the receiving streams. And this expert explained that more robust measures needed to be employed. Now FERC offered no direct rebuttal to these findings beyond its bare gesture towards its decades of experience. Now, FERC's failure to meaningfully consider the effectiveness of those erosion and sedimentation controls is not lessened by its attempts to distinguish the south gate project from the mainline. FERC claims that Mountain Valley on the south gate project agreed to implement supplemental control measures which exceed the minimum standards, but it cited to no specific upgrades or measures, and certainly none that have been proven effective, and much less a binding commitment by Mountain Valley to utilize those measures. And Mountain Valley in several instances in fact refused requests by state regulators to implement certain heightened mitigation measures. And now NORC and Mountain Valley's failures on the mainline be dismissed by pointing to To support that assertion, FERC relied on citation to rainfall data from a single county and referenced rainfall events in September and October 2018. But the agency offered no explanation for why similar rainfall events should not be expected to be repeated, given that one of the main effects of climate change is more severe storms. And just a kind of overarching question about what we're looking at here, because even if there's force to some of what you're saying at the end of the day and someone might conclude that, yeah, the commission could have made a different decision, that's not what we're looking at here, right? For our purposes, the question under NEPA is whether the commission gave it a hard look and engaged in the record analysis, not whether the conclusion it reached was correct. And at least FERC paid attention to this very set of concerns, the ones you're pointing at right now in the EIS at JA 332-ish, I can't remember exactly where, but somewhere in that vicinity. And so to the extent that we might disagree with the conclusion, that's just not a basis for us to set aside what the commission did. It's just whether they gave it the requisite look. Your Honor, that look must be rational. There must be a rational connection between the facts found and the decisions reached. And here that's just not the case. Again, FERC dismissed any failures on the mainline by citing two differences between the two pipelines that simply aren't reflected in reality. Again, FERC pointed to record-breaking precipitation without any recognition of very same precipitation events were likely to be repeated. And also, FERC relied on those precipitation events in September and October 2018, despite the fact that a significant amount of those violations occurred outside of those windows. On this issue, they also made a reference to the character of the terrain, right, and talked about whether it was flat. There was one clause in sentence in the EIS where FERC said that the terrain was flatter. Excuse me, but FERC did not provide data showing that the failures on the mainline only occurred on that sort of terrain. And as petitioners pointed out, although the Southgate does not contain as extensive of steep and highly erodible terrain as the mainline, there are nonetheless significant areas of steep and erodible terrain. And FERC's dismissal of those impacts by citation to bare experience and a simple statement that the terrain was flatter is simply not a reasoned determination of the impacts of the project. And not only were the direct impacts not rationally assessed, nor were the cumulative impacts when combined with the impacts of the mainline. I see that I'm out of time. For the foregoing reasons, petitioners respectfully request that the court vacate and remand FERC certificate order and the deficient EIS on which the certificate relies. Thank you, Mr. Luckett. Unless my colleagues have questions for you at this time, we'll Your honors, I'm Matt Estesapiri on behalf of the Federal Energy Regulatory Commission. I have to disagree with Mr. Luckett's contention that the commission gave no consideration to what happened on the mainline. I think as your honor pointed out, and this is in page 1-12 of the environmental impact statement joint appendix 332, the commission acknowledged those claims of failure and gave several reasons why they thought that it wouldn't be repeated. For one thing, they're not relying on the exact same mitigation that failed, that supposedly failed on the mainline. As the commission pointed out, the Mountain Valley continuously upgraded and improved its mitigation throughout the process of the mainline as problems were identified. The commission also pointed out that imposed by state regulation and the petitioner's very own reply brief reinforces this. At page 15, they quote a press release from the Virginia Attorney General who trumpets that they had in a consent agreement gotten Mountain Valley to improve mitigation that the against environmental degradation. So the mitigation is not exactly the same. The commission also noted, as you pointed out, that there are differences that it's not expected to be as wet, or there's no reason to believe it'll be as wet in the future because the precipitation that caused most of the events for the mainline took place in the year that was the wettest year in 125 years of recorded history. Now, it may be that we can expect more wet years in the future, and perhaps if what we were talking about was the life of the pipeline project, the likelihood of wetter years would be important, but here it's important to remember we're talking only about a relatively short construction period. We know that this is a 90-mile pipeline. The mainline was constructed, was 85 percent complete after a year and a half, and that's a 300-mile pipeline. So we know this is a relatively short period, and it's reasonable for the commission to conclude that it's unlikely that there would be as much precipitation and rain during the relatively short construction period. The commission also noted that the terrain is less flat. There is some steep slopes, but if you look at the... I'm sorry, this phone is... I'm not really sure what to do about this phone. I should have taken care of it sooner. It's my landline. I apologize, Your Honor. If you look at Appendix C to the 500 to 511, you'll see that the steep slopes, the identification of steep slopes on this route are relatively minor. They're almost all less than 100 feet. In total, they represent... I didn't do an exact calculation, but around two miles out of the 90-mile route, which is considerably less than Mountain Valley. And I guess the last thing I wanted to point out is that while, yes, there were some sedimentation events on the mainline, the commission had stated that it expected there to be some amount of sedimentation. The commission found later that the amount on the based on the record to say that this was a massive failure. With respect to the cumulative impacts, Your Honor, the petitioners claim that the impacts were not considered based on time and distance are not correct. The commission did evaluate the cumulative impacts of the Southgate pipeline. The petitioners just do not agree with the conclusions the commission reached. I see I'm out of time. If there are any other questions on any of these issues, I'd be happy to answer them. Hearing no questions, I think we'll let you rest, Mr. Estes, and we'll hear from Intervenors Council. Mr. Marwell, thank you, Mr. Estes. Thank you, Your Honor. Good morning, Jeremy Marwell for Intervenor Mountain Valley Pipeline. Just a few points responsive to the argument by petitioners about sedimentation. First, I think the standard of review here does decide the case for reasonably engaged with the arguments, took a hard look at sedimentation, acknowledged what had happened on the mainline, the lessons learned, and gave reasons why the and that is a hard look. It's all that APER requires. We do disagree with the petitioner's characterization of what happened on the mainline. As Mr. Estes explained, the commission did specifically engage with that in an order and found the effects only slightly different, but I think the important point for this court is there were a number of lessons learned during construction of the mainline FERC was closely monitoring, and the Southgate set of sediment controls sort of starts where the mainline left off, so we were improving throughout construction. Petitioners complain that we don't specify or the commission didn't have afforded specific enhanced measures. That's not correct. If you look among other places at JA-164, that was a response that Mountain Valley provided to a data request from FERC and explained specific measures that were going above what's required by state law, and some of those measures also go beyond what was required for the mainline. There's a technology that's used called FlexTERRA to help stabilize open when you have a construction site. There were enhanced protocols put in place, so that was all reasonably before the commission. With regard to rainfall and the adequacy of the data that the commission relied on, there was no argument on rehearing taking issue with the granularity of the data, whether it was 2018 or 2019. What's in the EIS is that FERC looked at annual data that was available. There's no competing data in the record, and I think there's no serious contention that 2018 was a record-breaking year, and that's part of what Mountain Valley was responding to. With regard to the other basis that the commission gave, that Southgate has flatter terrain, as FERC explained, there's an appendix to the EIS here that lists every crossing and provides the percentage steepness of the slope. There's a similar appendix in the mainline, which is many times longer. In other words, that's data supporting FERC's conclusion that Southgate is flatter. You can also just look at a map of Virginia, you know, mainline is coming through the mountains. You can look at where the Southgate project is. Petitioner's own expert at JA-235 talks about the concern that sedimentation measures or erosion control measures are harder in steeper terrain. That's an intuitive point, so it's a little odd to complain now that the fact that Southgate is flatter is not something that FERC could have reasonably considered. With regard to the effectiveness of the measures in general, petitioners have an expert who has a view, but here the commission said explicitly that the measures were based on and, in fact, go beyond what state law requires, refers to this handbook of measures that Virginia has that we were basing them on. That handbook has an extensive bibliography with scientific literature talking about the effectiveness of these measures, so that was all in the mix before FERC, and if it's a battle of experts about the choice of one measure versus the other, I think this court's role is not to second-guess the commission's reasonable resolution. I'm happy to answer any questions the court may have beyond these points, but otherwise we would respectfully request that the court deny the petitions for review. I just have one question, just as a background contextual matter, which is given all the backs and forths between the various courts and the various services and the fourth circuit and whatnot, what's the status of the forward since the description in the briefs? Just to quickly tick through, as you know, these are big projects that require a lot of permits from different agencies. There were some remands from the fourth circuit, one of the Forest Service and Bureau of Land Management right-of-way that was reissued in January of 2021. Petitioners appealed it to the fourth circuit. It was argued in October, awaiting decision. There was a new biological opinion, which is how you comply with the Endangered Species Act, that was released in September of 2020. Petitioners appealed, sought a stay. The fourth circuit denied a stay in November of 2020. That case was argued also in October of 2021 in the fourth circuit petition for review awaiting decision. The two we did in December, a water quality certification from Virginia and from West Virginia, both in December of 2021. Petitioners appealed both of those. There are stay motions pending in the fourth circuit. I believe one of the two is fully briefed. And then there are two things that we're still working on. We applied for what's called an individual permit. We had had some stays and remands from the fourth circuit relying on the nationwide permit to cross streams, essentially. We applied in March 2021. That application is pending. And then we have a pending application before FERC just to change some of the stream crossing methods, essentially reduce impacts by going under rather than through. That amendment was filed in February of 2021. The commission issued an environmental assessment in August of 2021, finding there wouldn't be significant impacts. That application is pending before FERC. And if I could just indicate, I mean, the main line is making progress forward. And we don't think there's any, you know, basis for the court to delay its review here. We have a final agency action on Southgate. You know, the permitting is moving forward. So I hope that answers your question. It was a long set of data. It does. Thank you. Great. Thank you, Mr. Marwell. Mr. Luckett, we'll give you your minutes for rebuttal. Your Honor, Respondent relies on improvements made over the measures that were implemented on the main line to show that they are unlikely, the failures there were unlikely to recur here. And they cite to the Virginia consent decree. But they ignored petitioner's significant failures of those same measures occurred after entry of that consent decree. And after Mountain Valley claimed that it would clean up its act. But again and again, both Mountain Valley's own reports and the notices of violations issued by regulators in Virginia and West Virginia show that even its heightened measures, as it describes them, have proven unsuccessful. As to the cumulative impacts referenced by respondents, they said that there would be no impacts because the crossing locations of the two different pipelines were three and a half miles apart. But FERC itself stated that sediment could travel a few miles downstream. And evidence that petitioners supplied from Mountain Valley's consultants showed sediment could travel much further downstream. So FERC's dismissal of the potential based on this spatial separation was irrational and not supported by the record. As was FERC's dismissal of cumulative impacts based on the temporal separation of the South Gate extension and the main line. FERC claims that there would be no significant cumulative impacts because the two projects construction schedules would not overlap. But FERC itself acknowledged that sedimentation impacts could be cumulative even if construction itself does not overlap because the sediment is deposited on the stream beds as it flows downstream, such that the impacts to benthic and other aquatic life are likely to be cumulative. FERC's conclusions are thus not supported by the record, rendering its EIS arbitrary and capricious. Thank you, your honors. Thank you, counsel. Thank you to all counsel. We'll take this case under submission.
judges: Srinivasan, Wilkins, Walker